O

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| AMERICAN MORTGAGE NETWORK, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD J. MORALES, an individual; LINDA MORALES, an individual; and DOES 1 through 190, inclusive,<br><br>Defendants. | ED CV 08-00947 LLP (FMOx)<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, American Mortgage Network, Inc., brings this action seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et. seq. and the Truth In Lending Act (TILA), 15 U.S.C. § 1635. The matter is ripe for decision.

## BACKGROUND

In June, 2007, Defendants Richard and Linda Morales borrowed $439,000 from Plaintiff American Mortgage Network to refinance their home in Fontana, California. The loan was evidenced by a note dated June 19, 2007 made by the Moraleses in favor of AMN.[1] The note was secured by a deed of trust which encumbered the Moraleses' home in Fontana.

The Moraleses obtained their refinance loan in June 2007. According to the California Department of Housing and Community Development, housing sales in California peaked in March, 2006 but began a rapid decline in 2007. California housing sales "bottomed out" in 2009 and have

---

[1] According to the declaration of Erin Burke Wells Fargo & Company is the successor in interest to AMN, d/b/a Vertice. For ease of reference, Plaintiff will be referred to throughout this opinion as AMN.

never recovered to their previous levels.[2] The median home sale price in California was slightly over $500,000 in 2007 but was only slightly over $300,000 in 2008, and was approximately $250,000 in 2009. In 2011, the median home sale price was barely over $300,000. In a paper prepared by the California Department of Housing and Community Development Division of Housing Policy Development, "[f]alling prices also left many homeowners 'underwater' in their mortgage loans, and trapped in homes worth less than the mortgage balance. The Public Policy Institute of California reported that CoreLogic, a private real estate data research firm, estimates 32 percent of mortgaged residential properties nationwide were 'underwater.'" *Id.* In other words, the Moraleses refinanced at the worst possible time in terms of home values in California. In their declaration, the Moraleses indicate theirs is one of the mortgages which is "underwater."

Approximately three and one-half months after the Moraleses refinanced their home, on October 5, 2007, AMN sent the Moraleses a letter explaining that a post-closing review of their file revealed a disclosure form had been competed erroneously.[3] As a result, the borrower's right to rescind under the Truth in Lending Act (TILA) was re-opened. A new "Notice of Right to Cancel" form was mailed to the Moraleses, with a revised date by which they were advised they could rescind the AMN loan. On October 19, 2007, the Moraleses signed the form and executed their right to rescind the loan. Pursuant to the Moraleses decision to rescind the loan, AMN sent them a letter dated November 8, 2007, explaining they would be required to return the loan proceeds, less any amounts paid by them. A payoff statement from AMN followed on November 9, 2007, reflecting an amount due of $423,269.09, which consisted of the original loan amount less all interest, points, fees paid at closing, and other payments made to date.

---

[2] *See* "The State of Housing in California 2011: Supply and Affordability Problems Remain." http://www.hcd.ca.gov/hpd/HCD_PaperState_of_Housing_in_CA2011.pdf

[3] Erin Burke's declaration asserts that in reality there was no error with the disclosure form, and the letter to the Moraleses was erroneously sent. The assertion is not further explained.

The Moraleses attempted to obtain other financing from CCI Mortgage Company. When CCI checked the Moraleses' credit rating, however, it discovered AMN reported the Moraleses' loan as delinquent.[4] At the Moraleses' request, AMN removed the delinquent notation from the Moraleses' credit report, but the Moraleses assert AMN also removed the entire refinance loan history from the report. Moraleses assert this caused them to be disqualified from obtaining a new mortgage.[5]

The Moraleses' efforts to obtain an alternate mortgage failed. There is an indication in the record that the Moraleses attempted to withdraw their notice of rescission, but Moraleses admit they have been unable to pay the back payments owed on the AMN loan. They hoped AMN would compromise its loan, but no compromise was reached.[6] Instead, AMN began the instant lawsuit.

The Moraleses contacted a Beverly Hills attorney who, after collecting a total of $14,000 from the Moraleses, refused to represent them any further when they were no longer able to pay him. The Moraleses have been proceeding *pro se* in this matter for the past eighteen months.

In February 2010, long after this lawsuit began and at AMN's request, the Moraleses completed a Home Affordable Modification Program (HAMP) application to determine whether they qualified for a loan modification.[7] The information contained on the application indicates Mr. Morales, who had been the sole provider for the family, was injured in the course of his job as a UPS driver and that as a result his income decreased. Mr. Morales explained his worker's compensation payments are

---

[4]Moraleses explain that an AMN representative (Sheryl Hassett) told them to stop making payments because the loan was "frozen" during the cancellation process.

[5]The other content of the Moraleses' credit history is not evident from the record, nor is an explanation or support for the assertion that the removal of a single item (the AMN loan) would disqualify them from obtaining a new mortgage.

[6]The Moraleses declaration indicates AMN offered a compromise which was "way more than the house was valued at, because the housing market was in and is currently in a slump."

[7]There is no indication on the record whether the Moraleses qualified for a loan modification under HAMP.

insufficient to meet his increasing expenses and credit card debt. He also explained he used all his savings to pay the attorney who now refuses to represent him. Although the Moraleses have worked to rebuild their credit by paying off credit card debt and avoiding new debt, they have not made any payments to AMN since at least January, 2008.

## DISCUSSION

AMN filed its Complaint seeking declaratory relief on July 15, 2008, after the Moraleses indicated their intent to rescind the loan, but failed to obtain alternate financing in order to repay the amount required to release the lien. AMN requests the Court to enter an Order declaring the rights, duties and liabilities of the parties. Specifically, AMN seeks a declaration:

> [T]hat if the Borrowers are entitled to rescind their loan, the Borrowers must simultaneously refund to Plaintiff the Loan's original principal balance, along with any other property or benefits the Borrowers have received; and in the event such refund is not made, that Plaintiff is entitled to exercise all of its rights under the Deed of Trust, including foreclosure . . . and for a declaration that if the Borrowers are entitled to rescind the loan, Plaintiff's Deed of Trust on the Property shall not automatically terminate, but will continue in full force and effect, and Plaintiff shall have no obligation to refund to the Borrowers any moneys, unless and until the Borrowers have repaid to the Plaintiff the Loan's original principal balance . . .

Complaint, p. 5.

The Truth in Lending Act (TILA) was enacted in 1968 "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1170 (9th Cir. 2003) *citing* 15 U.S.C. § 1601(a). If the required disclosures are not made, the consumer may rescind the loan. *Id.* Section 1635(b) governs the return of money or property when the borrower exercises the right to rescind the loan. *Id.* The borrower is not liable for any finance or other charge, and any security interest becomes void upon rescission. *Id.*

> The statute adopts a sequence of rescission and tender that must be followed unless the court orders otherwise: within twenty days of receiving notice of rescission, the creditor is to return any money or property and reflect the termination of the security interest; when the creditor has met these obligations, the borrower is to tender the

4

property. . . . Section 226.23 of Regulation Z implements § 1636(b). It tracks the statute and states:

(d) Effects of rescission.

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including the finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer many retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor...

(4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

12 C.F.R. § 226.23.

*Yamamoto*, *Id.* at 1170-71. A trial judge has discretion to condition rescission on tender by the borrower of the property he has received from the lender. *Id.* at 1171. Each case should be decided based on the equities of the situation. *Id.* The Courts have no discretion to alter TILA's substantive provisions, but they do have discretion to alter its procedural provisions. *Id.*

In *Yamamoto* the Ninth Circuit held that the Court may condition rescission on the borrower's ability to repay the loan. *Id.* at 1173. Rescission under § 1635(b) is an ongoing process with a number of steps. The *Yamamoto* Court reasoned that if it could alter the sequence of procedures after it decided rescission is warranted, there is no reason it could not do so before deciding rescission is warranted when it finds that, assuming the grounds for rescission exist, rescission would not ultimately be enforced because the borrower cannot comply with his obligations to return the loan proceeds. "If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what

she has received (less interest, finance charges, etc.) the court does not lack discretion to do before trial what it could do after." *Id.*

Several Circuit Courts of Appeal are in agreement with the Ninth Circuit in allowing a re-ordering of the usual sequence of events under TILA when it appears the borrower is not going to be able to follow through with the requirement of repaying the principal of the loan. *See e.g. Jobe v. Argent Mortgage Co.*, 373 Fed. Appx. 260 (3rd. Cir. 2010); *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007); *Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980); *FDIC v. Hughes Dev. Corp.*, 938 F.2d 889 (8th Cir. 1991); *Smith v. Argent Mortgage Co.*, 331 Fed. Appx. 549 (10th Cir. 2009);*Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992).

The sequence of rescission and tender set forth in TILA and Regulation Z is a "reordering of common law rules governing rescission." *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992). "Most courts have applied equitable principles to conclude the benefits of rescission under TILA should be conditioned upon the debtor's tender of repayment [because] . . .allowing for an unconditional right of rescission would allow a borrower to get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any." *Zimmerman v. Logemann*, 2011 WL 1674956 (W.D. Wisc.) at *10 (citations omitted, punctuation altered). "Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 820-21 (4th Cir. 2007).

The equitable goal of rescission under TILA is to restore the parties to "status quo ante." *Haas v. Falmouth Financial, LLC*, 783 F.Supp.2d 801, 806 (E.D. Va. 2011). The borrower, therefore, must be able to tender the borrowed funds back to the lender to obtain rescission. *Id. citing Yamamoto.*

> [T]o meet this obligation, plaintiffs seeking rescission frequently allege that they would be able to meet their tender obligation if they are allowed to sell the property after rescission is ordered and tender the proceeds. While courts are entitled to alter the

6

> timing of tender to provide some flexibility to the parties, it is critical that a court, in adjudicating a rescission claim, not order the lender to release its security interest in the debtor's property–thereby converting the lender into an unsecured creditor–without being 'assured' that the debtor will be able to repay the borrowed funds. Proceeding otherwise would 'offend traditional notions of equity,' and if a plaintiff is unable to demonstrate an ability to meet the tender obligation, a court has the discretion to dismiss the rescission claim without reaching the merits of the underlying TILA violations.

*Haas v. Falmouth Financial, LLC*, 783 F.Supp.2d 801, 806 (E.D. Va. 2011) (citations omitted, punctuation altered). District courts have "routinely" dismissed rescission claims where plaintiffs fail to demonstrate they would be able to meet their tender obligation if rescission were ordered. *Id.* A debtor's TILA claim is appropriately dismissed if he merely alleges he is willing to sell the house as a last resort, if he offers only caveat-laden speculation regarding his ability to tender, or if he offers only unsubstantiated or unqualified estimates of his home's value. *Id.* at 807.

While the Court is not unsympathetic to their plight, the Moraleses have now lived in their home rent-free for over four years. They have submitted no evidence that they have, at any time, had the ability to tender back to AMN the $423,269.09 they owe. Although Moraleses claim AMN's post-rescission actions prevented them from obtaining another mortgage, they have offered nothing but their own bare speculation they would have, but for AMN's actions, ultimately been able to obtain alternate financing for a home they admit was and remains "underwater." The Moraleses own declaration and the documentation they submitted in support their effort to obtain a loan modification support the conclusion that AMN's post-rescission actions notwithstanding, the Moraleses have never been in a position to tender $423,269.09 to AMN. "If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.) the court does not lack discretion to do before trial what it could do after." *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003). In this case, therefore, it is appropriate to grant AMN's request for declaratory relief.

## CONCLUSION and ORDER

For the reasons more fully explained above, Plaintiff's request for declaratory relief is

GRANTED. Now, therefore, it is ORDERED:

(1) Plaintiff's Complaint for Declaratory Relief is GRANTED;

(2) Judgment shall be entered in favor of Plaintiff and against Defendants in accordance with this Memorandum Opinion and Order.

Dated this 26th day of March, 2012.

BY THE COURT:

*[signature]*

Lawrence L. Piersol
United States District Court